UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 3 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-543-GWU

MICHAEL DOWNS,                                                   PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI) benefits.  The

appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Downs

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Downs

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Downs

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Downs

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985). Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments. Varley v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The current administrative law judge (ALJ) assessed the plaintiff's condition
in connection with his 2002 SSI application. He noted that a final agency decision
had been issued in April, 2001 regarding earlier-filed claims and stated that he
considered the period covered by that decision subject to the application of res
judicata. (Tr. 13).[1] He noted that during the new period there was no new and
material evidence showing "changed circumstances" and, therefore, determined that
Downs retained the same physical functional capacity for light level work. (Tr. 14).

---

[1] The precise findings of the prior agency decision indicated that the plaintiff was
capable of light level work which did not require more than occasional stair climbing,
exposure to temperature extremes, smoke, dust, fumes, gases; mental limitations
included having no useful ability to deal with the public, having "seriously limited but not
precluded" ability to deal with work stresses, perform detailed or complex instructions,
relate predictably in social situations. (Tr. 69). This earlier agency decision had been
reviewed and affirmed by the undersigned in Downs v. Barnhart, London Civil Action No.
01-245 (E.D. Ky.) (Tr. 71-81). In doing so, the Court noted the prior mental restrictions
were based on those provided by Gary Maryman (Tr. 78) and the physical restrictions
were based on the assessments by the state agency reviewers and one of the treating
cardiologist's somewhat contradictory restrictions (Tr. 79-81).

7

The ALJ noted that the recent record failed to contain evidence of formal mental health treatment, and that the agency medical advisors' opinions about the moderate functional limitations for the plaintiff was consistent with the findings of the prior decision and the current psychological evidence. (Tr. 16-17). Since the vocational expert identified a significant number of light and sedentary jobs compatible with this vocational profile, benefits were denied. (Tr. 20-21).

At the 2004 administrative hearing, the claimant admitted that he was still smoking, although not on a regular basis. (Tr. 40). He indicated that he had stopped working as a laborer when he had heart attacks. (Tr. 41). He had not been able to afford any recent heart catheterization since the 1990s and his last total checkup had been in October, 2002. (Tr. 42-43, 45-46). Basically, he went to his doctor, had his blood pressure checked, and prescription refills and not much more. (Tr. 42-43). He had also not had mental health counseling for several years before the hearing. (Tr. 43-44). While he denied doing much in the way of household chores at the hearing (Tr. 50-51), earlier in the application process he had admitted driving short distances, feeding his bird, walking some, sitting on the porch, and reading the Bible. (Tr. 166-168).

Very little new medical evidence was submitted.

Exhibit C2F showed that Dr. Khalid Saleh had prescribed many medications for the plaintiff in 2002, such as Nexium, Toprol, Paxil, and Zocor. (Tr. 173-175). No

8

—

clinical data was included as part of the exhibit, however. Saleh did have some
statements in an October, 2002 clinic note which indicated that plaintiff had
"occasional" episodes of shortness of breath and chest pain "on extreme exertion."
(Tr. 250). Because of abnormal EKG results, the doctor was "worried about his high
risk of arrhythmia and this could probably be related to ischemia and also left
ventricular systolic function." (Tr. 251). The contemplated recatheterization
procedures was never performed and the plaintiff apparently was smoking
cigarettes. (Tr. 253-254).

Dr. Elias Dalloul, of the Appalachian Regional Hospital, apparently saw the
plaintiff in both May, 2001 and October, 2001 (each occasion more than a year
before he filed his current SSI application) for complaints of shortness of breath and
chest pain. In May, the doctor had advised him to "continue symptom limited
activities" and noted that the patient did not want to have any further intervention for
financial reasons. (Tr. 179). In October, Dalloul again diagnosed cardiomyopathy,
but mentioned only that he encouraged the plaintiff to stop smoking. (Tr. 176). At
some point–since it was undated–Dalloul obtained a stress test which showed no
arrhythmia, and was negative for ischemia. (Tr. 178).

The plaintiff underwent a consultative evaluation in December, 2002. The
examiner noted normal heart sounds and rate, and no cyanosis, clubbing or edema
of the extremities. (Tr. 183). The examiner noted that Downs reported having

9

Downs

"occasional" chest pain, but that it was relieved by taking sublingual Nitroglycerine. (Tr. 184). Blood pressure was recorded as 137/72. (Id.) The doctor actually felt that the routine physical examination was within normal limits, and stated that "it would appear that the claimant has the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling." (Tr. 185).

One of the agency medical reviewers opined that the plaintiff was capable of light level exertion, with the occasional ability to climb, and a need to avoid concentrated exposure to temperature extremes, and environmental pollutants. (Tr. 193-197).

Given the fact that Dalloul's statements were actually a year prior to the SSI application[2], no follow up was done with Saleh and even Saleh recorded that the plaintiff's symptoms were associated with "extreme" exertion, and the fact that the consultative examiner found such minimal restrictions, the decision to rely on greater restrictions by the ALJ (consistent with the prior decision findings and at least one medical reviewer's commentary) for the current period appears almost gratuitous. While the plaintiff may actually suffer from greater limitations, the Court must work with the information before it.

---

[2]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

With regard to the plaintiff's mental health status, the Cumberland River Comprehensive Care facility, which the plaintiff had formerly attended, indicated that there was no current evidence of treatment at their facility. (Tr. 169).

The plaintiff did undergo a consultative mental health evaluation in March, 2003. The examiner indicated that the plaintiff was oriented, had clear speech, and his memory appeared intact. (Tr. 190). His Verbal IQ was listed as 98. (Tr. 191).  His WRAT scores showed a high school reading ability. (Tr. 191).  The examiner felt that there was nothing in his history to suggest below average cognitive abilities, but that he was having difficulty dealing with the subject of his mother's terminal illness. (Tr. 192).  This did not specifically suggest greater limitations than were used by the ALJ.

The plaintiff's brief focuses on the issue of a "lower level of intellectual functioning" which is not reflected by the current testing and, given the fact that the prior ALJ relied on Maryman's findings which included IQ showing average intelligence (Tr. 65), it does not appear that such was part of any prior agency findings.

For these reasons, as well as those cited in the defendant's brief at pp. 8-9, regarding the plaintiff's contentions regarding the Dictionary of Occupational Titles'

11

Downs

information, and at pp. 10-11 regarding the standing and walking capacity, the
decision will be affirmed.

This the _____ 3 1 _____ day of October, 2005.

G. WIX UNTHANK,
Senior Judge

12